In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-4083

LOUQUETTA R. O'CONNOR-SPINNER,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of
Social Security,

*Defendant-Appellee.*

————————

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 4:06-cv-00171-DFH-WGH—**David F. Hamilton**, *Judge.*

————————

ARGUED JULY 8, 2010—DECIDED NOVEMBER 29, 2010

————————

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Louquetta R. O'Connor-Spinner
appeals the order of the district court upholding the Social
Security Administration's denial of her 2004 application
for Supplemental Security Income and Disability Insurance
Benefits. Ms. O'Connor-Spinner principally contends
that the Administrative Law Judge ("ALJ"), who denied
her application for benefits, erred by failing to include her

moderate limitation on concentration, persistence and pace in the hypothetical he posed to a vocational expert ("VE"). She submits that this omission yielded flawed vocational evidence and an unsupported conclusion that she could obtain competitive employment. Ms. O'Connor-Spinner also contends that the ALJ failed to consider evidence of an additional social limitation. For the reasons set forth in this opinion, we reverse the judgment of the district court and remand this case for further proceedings before the agency.

# I

## BACKGROUND

### A.

Ms. O'Connor-Spinner, who is presently forty-one, suffers from depression and a variety of physical ailments. We focus here on the evidence of Ms. O'Connor-Spinner's depression[1] and do not recite the ample evidence of her physical impairments—degenerative disc disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease and obesity[2]—because the parties agree on the significance of the physical impairments.

---

[1] In her application for benefits, Ms. O'Connor-Spinner also claimed that she suffers from bipolar disorder, but we, like the ALJ, the district court and the parties on appeal, focus on the record evidence of depression.

[2] Initially, Ms. O'Connor-Spinner also claimed arthritis and a blood disorder.

The application for benefits underlying this appeal was filed in January 2004. In her application, Ms. O'Connor-Spinner claimed that increasingly severe physical and mental impairments left her unable to perform her past work as a delicatessen clerk, nurse's aide, shoe gluer or fast-food worker. She maintained that these impairments also prevented her from performing other work in the national economy.

Ms. O'Connor-Spinner's benefit application alleges an onset date for her depression of December 2003. However, her documentary evidence indicates that, even prior to that date, physicians investigating her physical ailments had observed signs of depression and discovered a medical history of depression and treatment with prescription antidepressants. Ms. O'Connor-Spinner had visited a community mental-health center for treatment of her depression three times during 2002, but after those visits, the center lost contact with her. Ms. O'Connor-Spinner previously had applied for disability benefits in 2001; however, a state-agency physician who reviewed her file in October 2002 concluded that her mental impairments, at that time, were not sufficiently severe.

Medical records from the years 2004 and 2005 document treatment for Ms. O'Connor-Spinner's physical ailments and only allude to her history of depression and prescriptions for antidepressants. The administrative record does not contain treatment records from mental-health providers after 2002.

In order to develop the record of Ms. O'Connor-Spinner's depression and related limitations, the state agency

requested that Dr. Kamla Paul, a psychologist, examine her in May 2004. Ms. O'Connor-Spinner told Dr. Paul that in the past she had experienced confusion, crying fits, violent outbursts (which included hitting her husband and pulling a knife on him) and attempts at suicide. Dr. Paul identified antidepressants among her medications. According to Dr. Paul, many of Ms. O'Connor-Spinner's abilities, such as abstraction and remote-memory access, were adequate. Her immediate memory and general information, however, were poor, and she suffered from a dysphoric mood and flat affect. Dr. Paul reiterated that Ms. O'Connor-Spinner "gets confused" and diagnosed her with depression. A.R. at 249-50.

Later that month, a different state-agency psychologist, Dr. D. Unversaw, reviewed Ms. O'Connor-Spinner's file. Dr. Unversaw concluded that Ms. O'Connor-Spinner's depression caused a moderate limitation on concentration, persistence and pace. The report by Dr. Unversaw also concluded, without elaboration, that this limitation would not prevent Ms. O'Connor-Spinner from performing moderately complex tasks. Dr. Unversaw checked a box, on another section of the form, indicating a limitation on receiving instructions and responding appropriately to supervisors. In addition, Dr. Unversaw summarized a third-party statement from Ms. O'Connor-Spinner's mother that Ms. O'Connor-Spinner responds to the rudeness of others by becoming rude herself.

The Social Security Administration denied Ms. O'Connor-Spinner's claim, initially in March 2004 and on reconsideration in July 2004. Ms. O'Connor-Spinner timely requested a hearing before an ALJ.

**B.**

**1.**

At a hearing before the ALJ in January 2006, Ms. O'Connor-Spinner testified that she frequently thought about suicide, sometimes went on eating binges or slept for days at a time, and rarely left her home. She admitted that she had failed to procure the most recent records of her mental-health treatment, but her attorney agreed to update the record, which the ALJ held open for thirty days. The additional mental-health records, however, never were submitted.

William Cody, a VE who was familiar with Ms. O'Connor-Spinner's work history but not her medical history, also testified at the hearing. The ALJ asked Mr. Cody to consider whether a hypothetical worker with certain limitations could perform Ms. O'Connor-Spinner's past work or other work in the national economy. In doing so, the ALJ posed a series of increasingly restrictive hypotheticals. The most restrictive hypothetical included Ms. O'Connor-Spinner's physical limitations, restricting her to sedentary work with breaks for stretching every thirty minutes, frequent (but not constant) handling or fingering, and no concentrated exposure to a variety of environmental irritants. The hypothetical worker could exert ten pounds of force occasionally and five pounds frequently and would face additional limitations for prolonged walking and postural activities like crouching or crawling. Further, the hypothetical worker was restricted to routine, repetitive tasks with simple instructions. The most restrictive hypothetical question did

not, however, include a limitation on concentration, persistence and pace, although later in his written decision the ALJ listed this limitation in assessing Ms. O'Connor-Spinner's residual functional capacity ("RFC"). Neither did the ALJ include any limitation on receiving instruction and responding appropriately to supervisors.

Mr. Cody testified that a person with the limitations specified in the hypothetical could not perform Ms. O'Connor-Spinner's past work as a delicatessen clerk, nurse's aide, shoe gluer or fast-food worker, but could adjust to work as a sedentary cashier, hand packer or telephone solicitor. For a sedentary cashier, the VE estimated that 200 jobs were available in the region; for a hand packer, the number was 75, and for a telephone solicitor, 100.

After considering the evidence, the ALJ concluded that Ms. O'Connor-Spinner was not disabled. In so finding, the ALJ applied the standard five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ determined that Ms. O'Connor-Spinner had not engaged in substantial gainful activity since December 2003 (step one); suffered from severe impairments as a result of degenerative disc disease, bilateral carpal tunnel syndrome, sleep apnea, restrictive lung disease, obesity and depression (step two); did not have any impairments that met or equaled the listings (step three); could no longer perform her former jobs (step four); but could do other jobs and thus was not disabled (step five).

**2.**

The Appeals Council declined review in October 2006. Ms. O'Connor-Spinner then filed this action seeking judicial review in the district court, and the court upheld the ALJ's decision in December 2007. In January 2008, Ms. O'Connor-Spinner filed a motion to alter or amend the judgment, which the district court denied in November 2009.

## II

## DISCUSSION

**A.**

Because the Appeals Council denied Ms. O'Connor-Spinner's request for review, the ALJ's ruling is the final decision of the Commissioner of Social Security. *See Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). We review that determination directly, rather than deferring to the decision of the district court. *Id.* In reviewing the ALJ's decision, we examine whether it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and his conclusions. *Getch*, 539 F.3d at 480; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**B.**

Ms. O'Connor-Spinner presents two challenges on appeal.

**1.**

First, Ms. O'Connor-Spinner contends that the ALJ erred in omitting her moderate limitation on concentration, persistence and pace from the hypothetical posed to the VE, even though the ALJ found that such a limitation exists. The Commissioner concedes the general principle that the hypothetical must account for all limitations, but contends that the ALJ implicitly incorporated all limitations into the question by confining the hypothetical worker to routine, repetitive tasks with simple instructions. For the reasons that follow, we conclude that the ALJ's hypothetical did not supply the VE with information adequate to determine whether Ms. O'Connor-Spinner could perform jobs in the national economy.

Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations.[3] Among the limitations the VE must consider are deficiencies of concentration, persistence and pace. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).[4] Our cases, taken together,

---

[3] *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *accord Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

[4] *Accord Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996).

suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical.

We have not insisted, however, on a per se requirement that this specific terminology ("concentration, persistence and pace") be used in the hypothetical in all cases. We sometimes have assumed a VE's familiarity with a claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations.[5] This exception to the general rule, however, does not apply where, as here, the ALJ poses a series of increasingly restrictive hypotheticals to the VE, because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). In any event, no evidence exists here that the VE reviewed Ms. O'Connor-Spinner's medical history, as opposed to just her work history, or heard testimony about the limitation.

We also have let stand an ALJ's hypothetical omitting the terms "concentration, persistence and pace" when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's

---

[5]  *See Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003; *Steele*, 290 F.3d at 942; *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992).

limitations would be unable to perform. We most often have done so when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work. For instance, in *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), we let stand a hypothetical formulated in terms of "repetitive, low-stress" work, a description that excluded positions likely to trigger symptoms of the panic disorder that lay at the root of the claimant's moderate limitations on concentration, persistence and pace. *Id.* at 285, 288-89. Similarly, in *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007), we upheld a hypothetical that restricted the claimant to low-stress, low-production work when the claimant's difficulties with concentration, persistence and pace arose from stress-induced headaches, frustration and anger. *See also Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002) (finding VE's inquiry into low-stress, uncomplicated work accounted for limitations arising partly from panic disorder).

Some hypotheticals which we have allowed have presented closer questions. For instance, in *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009), the claimant's "moderate difficulties with concentration, persistence, and pace stemmed from his chronic pain syndrome and somatoform disorder." Although the limitations on concentration, persistence and pace were not mentioned in the hypothetical, the underlying conditions were. *Id.* at 522. On the facts of that case, the link between the claimant's pain and his concentration difficulties was apparent enough that incorporating those difficulties by reference to his pain was consistent with the general rule, albeit just barely so. Although we allowed the

hypothetical, we noted that its failure to include specifically these limitations was "troubling." *Id.* at 521.

In most cases, however, employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace. *Stewart*, 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace); *see also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (allowing VE to consider only one- or two-step tasks did not account for limitations of pace); *Kasarsky*, 335 F.3d at 544 (phrasing hypothetical question as involving an individual of borderline intelligence does not account for limitations of concentration). The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity. *Stewart*, 561 F.3d at 684-85; *Craft*, 539 F.3d at 677; *Kasarsky*, 335 F.3d at 544; *see also* SSR 85-15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The Commissioner, however, relies upon *Simila*, *Johansen*, *Sims* and *Jens v. Barnhart*, 347 F.3d 209 (7th Cir. 2003), for

the broad proposition that an ALJ may account generally for moderate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled work. The Commissioner reads these cases too broadly. We already have explained why *Simila*, *Johansen* and *Sims* are distinguishable from this case and do not conflict with the general rule. *Jens* is inapposite; in that case, the ALJ expressly listed the claimant's limitation on concentration in the hypothetical posed to the VE. 347 F.3d at 211.

Unlike in *Johansen* and similar decisions, in the present case it is not clear whether the hypothetical, which included a restriction to repetitive tasks with simple instructions, would cause the VE to eliminate positions that would pose significant barriers to someone with the applicant's depression-related problems in concentration, persistence and pace. The state examiner's RFC determination explicitly noted that there were at least moderate limitations here, and the ALJ agreed with that determination. As discussed, limiting a hypothetical to simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace.

We acknowledge that there may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand. Yet, for most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do. In this case, a remand is required.

**2.**

In Ms. O'Connor-Spinner's second challenge she claims that it was incumbent on the ALJ to explain whether and to what extent he considered a social limitation that Ms. O'Connor-Spinner contends wrongly was ignored. We agree that the ALJ should clarify his position on remand, although the omission, standing alone, might not have supported a remand.

The reviewing psychologist, Dr. Unversaw, found a moderate limitation on "[t]he ability to accept instructions and respond appropriately to criticism from supervisors." A.R. at 266. As the Commissioner has explained before, even a moderate limitation on responding appropriately to supervisors may undermine seriously a claimant's ability to work. 20 C.F.R. § 404.1545(c); SSR 85-15. The ALJ did not include this limitation in the hypothetical he posed to the VE, nor does he discuss it explicitly in his decision. An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence. *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001). Therefore, the ALJ should explain whether he credits the reviewing psychologist's finding and, if so, should account for this information in the new hypothetical.

The Commissioner protests that the ALJ was entitled to disregard the finding without comment because it appears only in the "Summary Conclusions" section

of Dr. Unversaw's evaluation and is not repeated in the "Functional Capacity Assessment" section. According to the Commissioner's view, the former section is simply a worksheet prepared en route to furnishing the latter, and thus lacks evidentiary value. The ALJ's decision, however, refers to, and appears to give weight to, evidence from both parts of the form. Because the ALJ did consider both parts of the form in making his decision, we need not decide today whether an ALJ may ignore entirely the worksheets of a reviewing psychologist.

Ms. O'Connor-Spinner also points to a statement, made by her mother and recounted by Dr. Unversaw, that she can respond to other people's rudeness by becoming rude herself. Ms. O'Connor-Spinner has not shown what this statement, if credited, adds to her case. Nevertheless, the ALJ is free to address this statement on remand if he considers it appropriate to do so.

## Conclusion

We conclude that the ALJ failed to direct the VE to the totality of Ms. O'Connor-Spinner's limitations, thus leaving unsupported the determination that someone with her limitations could perform work in the national economy. We further conclude that the ALJ did not address potentially important evidence that Ms. O'Connor-Spinner has difficulty taking instructions and responding appropriately to supervisors. Accordingly, the judgment of the district court is reversed, and

this case is remanded to the agency for further proceedings consistent with this opinion.

REVERSED and REMANDED