NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 15, 2017
Decided December 19, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-3894

| | |
|---|---|
| TANYA BETH CIHLAR | Appeal from the United States District |
|  *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
|  *v.* | No. 15-cv-00560 |
| | |
| NANCY A. BERRYHILL, | Barbara B. Crabb, |
| Acting Commissioner of Social Security, | *Judge*. |
|  *Defendant-Appellee*. | |

**O R D E R**

Tanya Cihlar appeals a district court's judgment upholding an Administrative Law Judge's determination that she is not entitled to Supplemental Security Income. Cihlar's only appellate argument is that the ALJ did not include her "moderate limitations" in "concentration, persistence, or pace" in his hypothetical question to a vocational expert. But the ALJ's question referred to "no production or pace rate work," which adequately reflects Cihlar's limitations. Because substantial evidence supports the ALJ's decision, we affirm the district court's judgment.

When Cihlar applied for Supplemental Security Income in 2010 at age 32, she alleged that she was unable to work because of back and hip problems, numbness on her right side, and a learning disability. She initially alleged an onset date in February 2008, but later amended that date to January 2011. An ALJ denied her application for benefits, but the Appeals Council remanded to the ALJ, in part, for further consideration of a report by Dr. Robert Schedgick, a consulting psychologist who examined Cihlar in 2010. Cihlar's arguments in this court focus on whether the ALJ properly accounted for her difficulty, as described by Dr. Schedgick, in maintaining work pace; Cihlar no longer contends that her physical impairments disable her.

Schedgick thought that Cihlar's mental activity was "within normal limits." He amplified his opinion: "Her work pace probably has to be slowed down to allow her to function adequately. She can attend adequately to the task if the information is presented and not bound by time." He further explained that Cihlar had an IQ score of 72, falling within the borderline range of intellectual functioning for people her age. This left her with "some very mild difficulties in focusing and concentrating."

On remand the ALJ gave "substantial weight" to Schedgick's report. Based on the report, the ALJ found that Cihlar had "difficulty doing tasks in a fast manner." But the ALJ also relied on Schedgick's opinion that Cihlar's memory and concentration were within normal limits. Other evidence reinforced this conclusion. At the hearing, the ALJ noticed no problems with her focus or concentration. And her work history and daily activities further confirmed her ability to concentrate and complete tasks. For example, Cihlar helped dismantle barns, kept track of her finances, and filed self-employment income taxes using TurboTax software on a computer. She also gardened, read, helped her children with their homework, played games, and knitted.

Her mental impairments, the ALJ concluded, only minimally limited her ability to work. The ALJ determined that, subject to certain physical restrictions not relevant here, Cihlar could perform light work "that is unskilled in nature, routine with no constant decision-making or work place changes, [and] no production pace rate." Accordingly, the ALJ described to the vocational expert a hypothetical person with those characteristics:

> Let's assume we have . . . a younger individual with an unskilled work history. . . . she is able to use Turbo Tax and she can read a chapter in a book, but may not remember it well, but she can read a chapter in a book. So, I think limited education is a fair description of her educational status.

It's consistent with the grades she completed and some of her functional abilities that she's described here. . . . Let's assume light, the RFC, unskilled, light . . . The work should be routine, no constant decision making or work place changes, no production or pace rate work, and no constant interaction with others.

The ALJ then asked the expert whether the national economy has jobs for such a person, and the expert said yes—nationally there are over 300,000 suitable jobs as a price marker, router, or labeler. (According to the Dictionary of Occupational Titles, in these jobs workers put stickers or tags on packages that show price, delivery route, destination, or other identifying information. *See* Job Codes 209.587-034; 222.587-038; 920.687-126.) Cihlar's attorney asked if the number of jobs would shrink if the worker was limited to only occasional interaction with supervisors or coworkers. The expert replied, "No." The ALJ concluded that Cihlar was not disabled because she could perform existing jobs.

The Appeals Council denied Cihlar's request to review the ALJ's decision. She then sought judicial review pursuant to 42 U.S.C. § 405(g). The district judge upheld the agency's denial of benefits, and Cihlar timely appealed.

In this court Cihlar principally contends that her work-pace limitations were not appropriately included in the ALJ's hypothetical to the vocational expert. An ALJ generally must orient the vocational expert to all of the claimant's limitations that are supported by the record, including deficiencies of concentration, persistence and pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). But the ALJ need incorporate into the questions for the expert only those limitations that the ALJ accepted as credible. *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007); *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002).

The ALJ fulfilled his duty. He credited Dr. Schedgick's opinion that Cihlar's "work pace probably has to be slowed down to allow her to function adequately," and accordingly he told the vocational expert that the jobs should have "no production or pace rate." Cihlar replies that the question should have limited the expert to jobs where *Cihlar herself* determines the pace. She zeroes in on this sentence in Schedgick's report: Cihlar "could attend adequately to the task if the information is presented and *not bound by time.*" (A.R. 509) (emphasis added). But in reading all sentences in the report together, the ALJ (and the expert) reasonably understood Schedgick to mean that Cihlar

had "difficulty doing tasks in a fast manner." The ALJ did not, and was not required to, accept Cihlar's contention that she could work only at her own pace.

No rule requires that the ALJ use a particular wording regarding pace limitations in the hypothetical if alternative phrasing adequately accounts for the claimant's limitations. *O'Connor-Spinner*, 627 F.3d at 619. The ALJ permissibly used the alternative phrase "no production or pace rate work" to account for Cihlar's work-pace limitations. One might wonder whether, in using this phrase, the ALJ literally limited Cihlar to jobs where only she sets the pace, and whether price markers, routers, or labelers work only at their own pace. No matter.  As we have already explained, we understand the ALJ's hypothetical to exclude all fast-paced work that the ALJ (and by extension the expert) thought she would have difficulty doing. *See O'Connor-Spinner*, 627 F.3d at 619. Therefore the hypothetical adequately accounts for Cihlar's limitations.

One last observation: Cihlar's appeal focuses on her "pace" limitations, but she also mentions "concentration" and "persistence" limitations, and argues that the ALJ did not adequately account for these. We disagree. The ALJ put substantial weight on Schedgick's report that Cihlar's memory and concentration were within normal limits. And in questioning the expert, the ALJ also limited the hypothetical worker to "routine, no constant decision making or work place changes, and no constant interaction with others." This questioning adequately accounts for Cihlar's credible concentration and persistence limitations. *See O'Connor-Spinner*, 627 F.3d at 619. True, the ALJ did not use the magic words "concentration" or "persistence," but he included terms reflecting Cihlar's mental limitations that only minimally impacted her work ability.

The ALJ reasonably accounted for Cihlar's concentration, persistence, and pace limitations in his hypothetical question to the vocational expert. We therefore AFFIRM the district court's decision to uphold the denial of benefits.