**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2019
Decided June 28, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2910

| | |
|---|---|
| MICHAEL SAUNDERS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 17-cv-616-bbc |
| ANDREW SAUL, Commissioner of | |
| Social Security, | Barbara B. Crabb, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

This appeal arises out of Michael Saunders's pursuit of Disability Insurance Benefits and Supplemental Security Income from the Social Security Administration. His applications contended that he was disabled as a result of several physical and mental impairments. But an Administrative Law Judge (ALJ) found that he was not so bad off as to be disabled, and thus he was not eligible for either type of benefit. He sought review in the district court, see 42 U.S.C. § 405(g), but it concluded that substantial evidence supported the ALJ's decision. Now appealing from the district

court, see 28 U.S.C. § 1291, Saunders raises only one issue: whether the ALJ properly accounted for his moderate limitations in concentration, persistence, or pace. We conclude that the judge did so, and we therefore affirm the judgment of the district court.

**I**

Saunders's appeal primarily addresses his mental rather than his physical conditions, and so we do not address the latter problems. Saunders is 49 years old. In addition to suffering from longstanding problems such as back pain, Saunders is cognitively impaired by major depressive disorder and borderline intellectual functioning. He held various factory jobs, such as packaging diapers, processing meats, and packing eggs, before he stopped working because of his impairments. His road to this court has been protracted. He first applied for benefits in September 2005, alleging that he had been disabled since mid-2004. Later, he amended his alleged onset date to August 2009. Since then, four different ALJs have denied his claim, and there have been several remands concerning the extent of his cognitive difficulties: the first remand was ordered by the Appeals Counsel, the second by a federal district court, and the third based on a joint stipulation by Saunders and the Commissioner. The latest remand order instructed the ALJ to evaluate the severity of Saunders's mental impairments in light of the opinions of three medical experts who testified at earlier hearings and two consultative psychiatrists who had examined him.

Each of these doctors offered opinions about Saunders's mental impairments and, with varying degrees of specificity, opined that Saunders was limited in concentration, persistence, or pace. In August 2009, psychologist and state consultative examiner Marcus Desmonde evaluated Saunders and opined that Saunders appeared "capable of understanding simple verbal instructions, but may have some difficulties carrying out tasks with reasonable persistence and pace." Medical expert Dr. Joseph Melancharbol testified by phone at a February 2010 hearing and concluded that Saunders's mental impairments caused him moderate limitations in "persistence or pace." In February 2013, Dr. Kurt Webber, a psychologist, examined Saunders and determined that he could "concentrate for a long enough period of time to hold a conversation, to read, and to work on a computer" but nevertheless was moderately limited in his ability to maintain concentration. Two more medical experts, Dr. Shakil Mohammed and Dr. Miriam Sherman (both psychiatrists), testified at hearings in June and December 2013, and found that Saunders had mild and moderate limitations in concentration, persistence, or pace.

In this, the fourth round of hearings, ALJ Debra Meachum relied most heavily on Dr. Melancharbol's views, crediting his opinion that Saunders should be limited to simple, repetitive tasks with up to four-step instructions in a habituated setting; no tasks requiring problem solving or emotionally charged interactions with others; object-oriented work; and "no other limitations." ALJ Meachum also took into account Saunders's testimony at a hearing in May 2017, during which he stated that he had been working approximately 20 hours per week as a cook at a restaurant owned by a family friend but could not work more than that because of his back pain. He said that he works with a few other people and generally gets along with them, but he has difficulty understanding orders when servers "put[] them in differently" and needs help when the restaurant is busier than average. At the end of a shift, he becomes "mentally tired," gets headaches, and requires at least two fifteen- to twenty-minute breaks during a five-hour shift. He said that he could learn new recipes, but only if they are written down. Saunders also testified that he struggles with reading and has trouble concentrating—for example, he cannot sit and watch television without picking up his phone to play a game every few minutes. He does not believe that he can handle fast-paced environments.

Later during the hearing, the ALJ asked a vocational expert (VE) whether a hypothetical person with Saunders's age, education, and work history could perform any work if he were limited to the following restrictions: "Light exertion, unskilled work involving simple, routine, and repetitive tasks with no fast-paced production line or tandem tasks, only occasional changes in the work setting, only occasional interaction[s] with others, including the public, supervisors, and coworkers." The VE opined that the person could not perform Saunders's past work but could work as a laundry worker, a router, or a sweeper. The expert added that if the same person were limited to sedentary positions, he could still work as an ampule sealer.

The ALJ then applied the standard five-step analysis, see 20 C.F.R. § 404.1520(a), and concluded that Saunders was not disabled. She found that there had been continuous 12-month periods during which Saunders did not engage in substantial gainful activity (Step 1); that Saunders suffered from severe impairments—degenerative disc disease, spine disorders, major joint dysfunction, major depressive disorder, and borderline intellectual functioning—within the meaning of the Social Security Act and its regulations (Step 2); and that these impairments did not meet a listing for presumptive disability (Step 3).

Just before turning to Step 4, the ALJ assessed Saunders's residual functional capacity (RFC) and determined that he could perform light work with a sit/stand option, as long as it was limited to "unskilled work involving simple, routine, and repetitive tasks; no fast-paced production line or tandem tasks; only occasional changes in his work setting; and GED levels of one or two." She further determined that Saunders could interact with the public, coworkers, and supervisors only occasionally, and that he required normal, scheduled work breaks. She gave "great weight" to Dr. Melancharbol's opinion and incorporated in Saunders's RFC all but one of the limitations that Dr. Melancharbol had identified. The omitted restriction was a limitation to "object-based work"—one that had not been proposed by any other medical source and that the ALJ thought had been accounted for by corresponding limitations already incorporated into the RFC. She gave "some weight" to the opinions of Drs. Desmonde, Mohammed, and Sherman, as well as "limited weight" to Dr. Webber's findings, noting that various aspects of each doctor's opinion were not supported by the record as a whole. Considering all this, the ALJ concluded that the evidence showed moderate limitations in concentration, persistence, or pace. She then determined that Saunders could not perform any past relevant work (Step 4), but that he could perform other jobs in the national economy, such as laundry worker, router, sweeper, and ampule sealer (Step 5).

The Appeals Council denied Saunders's request for review, making the ALJ's decision the final word of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). As we noted, the district court upheld the ALJ's decision. It concluded that the ALJ permissibly accounted for Saunders's limitations in concentration, persistence, or pace by relying on "medical opinions in formulating her [RFC] assessment and hypothetical questions to the [VE]."

## II

Before this court, Saunders argues again that the ALJ failed to account for his moderate limitations in concentration, persistence, or pace in the hypothetical she posed to the VE. The ALJ erred, Saunders says, by "merely recit[ing] the medical record" without explaining "how Saunders's mental condition related to the limitations in the hypothetical question." Saunders particularly challenges the ALJ's reliance on the testimony of Dr. Melancharbol, whose opinions, he believes, are not supported by substantial evidence.

The ALJ must "orient the VE to the totality of a claimant's limitations," including deficiencies in concentration, persistence, or pace. *Moreno v. Berryhill*, 882 F.3d 722, 730

(7th Cir.), as amended on reh'g (Apr. 13, 2018) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). We have said "[a]gain and again" that "when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (collecting cases). Often, "employing terms like 'simple, repetitive, tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace." *O'Connor-Spinner*, 627 F.3d at 620. Granted, there is no "per se requirement" that the ALJ use the "specific terminology" of "concentration, persistence, [or] pace." *Id.* at 619. We will accept "an ALJ's hypothetical omitting the terms 'concentration, persistence [or] pace' when it [is] manifest that the ALJ's alternative phrasing specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform." *Id.* at 619. "[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *Id.*

The ALJ here relied on Dr. Melancharbol's testimony to assess Saunders's limitations, and she appropriately included in her hypothetical question to the VE all of the doctor's proposed limitations that she found to be supported by the record. Such reliance on a medical expert in crafting a hypothetical to a VE is permissible. See *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002). When the ALJ asked Dr. Melancharbol—who already had opined that Saunders was moderately limited in concentration, persistence, or pace—to confirm that Saunders needed "no other limitations," he did so.

Saunders replies with a general complaint that Dr. Melancharbol's testimony is not supported by substantial evidence. The ALJ should not have relied upon it, he contends, because the doctor's findings were inconsistent with other evidence (presumably the opinions of the other doctors). But Dr. Melancharbol's testimony *is* evidence upon which the ALJ may rely. And other than noting that Dr. Webber and Dr. Sherman also found moderate limitations in concentration, persistence, or pace, Saunders does not say what evidence the ALJ should have relied on or why it undermines Dr. Melancharbol's testimony.

Saunders analogizes his case to *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), where this court held that an ALJ erred in relying on a medical expert in posing a hypothetical question to a VE. But his analogy is inapt—the ALJ erred in that case, we said, because she adopted a state-agency psychologist's assessment but failed to include

concentration-, persistence-, and pace-related restrictions from the assessment in her hypothetical. *Yurt*, 758 F.3d at 857. We did not discredit the psychologist's assessment, as Saunders wants us to do here with Dr. Melancharbol's testimony. The ALJ was entitled to credit his opinion and include in her hypothetical most of the restrictions he identified. Saunders provides no convincing reason for this court to question Dr. Melancharbol's opinion. Indeed, as *Yurt* pointed out, it is not our role to "reweigh the evidence." *Id.* at 856–57.

Saunders never once has told this court what other restrictions the ALJ should have included in her hypothetical, nor even at oral argument could he suggest a better way to capture the idea behind limitations in concentration, persistence, and pace and apply those problems to job requirements. The limitations that the ALJ included— general though they may be—are substantially supported by Dr. Melancharbol's testimony, which itself is largely consistent with the opinions of the other examiners and experts. See *Jozefyk*, 923 F.3d at 498 (noting that this court will uphold even "generic[]" limitations so long as they "adequately account for the claimant's demonstrated psychological symptoms" found in the record).

We see no reversible error in ALJ Meachum's handling of this case, and in particular, none in the hypothetical she used. We therefore AFFIRM the judgment of the district court, which in turn upheld the ALJ's decision.