NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2019
Decided December 16, 2019

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 19-1394

| | |
|---|---|
| GREGORY ALAN URBANEK,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-201 |
| ANDREW M. SAUL, Commissioner of<br>Social Security,<br>    *Defendant-Appellee*. | Barbara B. Crabb,<br>*Judge*. |

**O R D E R**

This appeal arises out of Gregory Urbanek's pursuit of disability insurance benefits and supplemental security income from the Social Security Administration. Urbanek asserted disability based on several mental and physical impairments. But an Administrative Law Judge ("ALJ") found him not disabled, and the district court concluded that substantial evidence supported the ALJ's decision. In this appeal, Urbanek raises a single issue: whether the ALJ properly accounted for his moderate limitations in concentration, persistence, or pace. We conclude that the ALJ did so; and affirm.

**I**

Urbanek, now 54, applied in 2014 for supplemental security income and disability insurance benefits, alleging disability based on Tourette's syndrome, obstructive sleep apnea, depression, back pain, anxiety, a learning disability, and bilateral foot numbness. Urbanek had worked full time as a machine operator for many years before requesting a voluntary lay off because of his impairments. At the time of his disability application, Urbanek was working 20 hours a week as a punch press operator. Both before and after his application, Urbanek reported to his treating doctors that his conditions prevented him from sleeping, so he persistently felt fatigued and had difficulty concentrating.

In late 2014, Urbanek told his primary doctor that he wanted to go on disability and his doctor referred him to a licensed psychologist, Gregory Pritchett, for a neuropsychological evaluation. Urbanek complained to Dr. Pritchett of excessive fatigue, fitful sleep, depression, and anxiety, and reported that he struggled to function at his job. He also reported "having problems with memory and not being able to think as quickly and as clearly as before, being easily distracted, unable to concentrate or to use common sense." Dr. Pritchett noted, however, that his "memory for immediate, recent, and remote events appeared grossly intact, and quite good." Dr. Pritchett determined that Urbanek's sleep and emotional disorders probably impacted his ability to multitask and some aspects of memory. But he concluded that Urbanek's "mild cognitive deficits alone" did not "warrant a finding of disability," and that he was "more than capable of working as long as he was matched with the right job."

Several of the medical professionals who treated Urbanek opined that he was capable of working. Travis Krahn, a therapist whom Urbanek saw for depression, recorded Urbanek's comments that he was able to take frequent breaks at work and that his supervisor had "never complained about his productivity." At the last documented visit, Krahn noted that Urbanek's "depression seems to serve a function; that is, to receive disability." Dr. David Momont, one of Urbanek's primary doctors, opined that he could "find meaningful work" if it was in a structured environment. And one of Urbanek's sleep specialists noted that if he were active in his treatment he could be "returned to full functional status."

Urbanek's medical records were reviewed by two agency psychologists, Dr. Debra Pape and Dr. Thomas Yared, who both opined that Urbanek had severe impairments of affective and anxiety disorders, causing moderate limitations in social functioning and concentration, persistence, or pace. On the mental-capacity-assessment forms that they filled out, Dr. Pape and Dr. Yared checked boxes to reflect their findings

that Urbanek had moderate limitations in carrying out detailed instructions; concentrating for extended periods; maintaining a schedule, regular attendance, and punctuality; and completing a normal workday or workweek without interruptions from psychologically based symptoms and maintaining pace without unreasonable length or frequency or rests. Both concluded, in their narrative opinions, that Urbanek could sustain the basic mental demands of unskilled work but should be limited to performing simple tasks that required up to three steps in a structured work environment.

At his hearing before the ALJ in 2017, Urbanek testified that he could not "concentrate and focus" on his daily tasks and that his impairments made him miserable, tired, and fatigued. He identified his primary disabilities as severe sleep apnea, Tourette's syndrome, and back pain. Urbanek testified that he had difficulty sitting or standing for more than ten minutes at a time. He said that he drove about 27 miles each way by himself for his part-time job. And though he tried to work shifts longer than four hours, he could not sustain the effort because afterwards he could not think clearly and had a hard time driving home.

A licensed psychologist, Ellen Rozenfeld, testified at the hearing as an impartial medical expert. She acknowledged that Urbanek had moderate limitations in concentration, persistence, or pace, but concluded that his attention and concentration "should be sufficient" to complete "tasks of a simple, routine nature." Her review of Urbanek's medical records reflected that he was clear and alert; grossly oriented and attentive; his memory for immediate, recent, and remote events appeared grossly intact if not quite good; his judgment and insight appeared to be full; he appeared acutely sensitized to symptoms and problems; and he had difficulty binding his anxiety and self-soothing. In addition to limiting Urbanek to simple, routine tasks, she also recommended that he be restricted to only occasional contact with others and "a more predictable work setting, routine with no changes, [and] simple decision making." She could not comment on his physical stamina to complete an eight-hour day but testified that she did not think the medical records supported a marked limitation in concentration. Nor did the record support Urbanek's subjective complaints regarding the severity of his symptoms.

A vocational expert was asked at the hearing to consider a hypothetical person with Urbanek's age, education, and work experience; who could perform light work with certain limitations; and who was restricted to the following: performing simple, routine tasks requiring no more than short, simple instructions; making simple work-related decisions, with few workplace changes; engaging in no more than occasional contact with the general public, in brief, superficial, and incidental ways;

engaging in no more than occasional contact with supervisors and coworkers; and working in proximity to others, but with no shared or so-called "tandem" tasks. The vocational expert opined that this person could perform Urbanek's past work as a production assembler, and alternatively could work as a housekeeping cleaner, mail clerk, or routing clerk.

The ALJ applied the familiar five-step analysis, *see* 20 C.F.R. § 404.1520(a), and concluded that Urbanek was not disabled. She determined that Urbanek had not engaged in substantial gainful activity since his alleged onset date in September 2014 (step 1); that he suffered from severe impairments—obstructive sleep apnea, obesity, degenerative disk disease, Tourette's syndrome/tic disorder, insomnia, and depressive disorder—within the meaning of the regulations, *see* 20 C.F.R. § 404.1520(c) (step 2); and that these impairments did not meet a listing for presumptive disability (step 3). Between steps 3 and 4, the ALJ determined that Urbanek had the requisite residual functional capacity to perform light work with certain limitations (simple routine tasks with no more than short, simple instructions; simple decision making; few workplace changes; only occasional contact with the public of a brief, superficial, and incidental nature; only occasional interactions with supervisors and coworkers; and the ability to work in proximity to others but with no shared or tandem tasks).

In assessing Urbanek's residual functional capacity, the ALJ acknowledged his reported difficulty with attention and concentration but noted that he was able to concentrate sufficiently to perform many tasks. Specifically, he could drive 27 miles each way to work, prepare simple meals, help mow the lawn and shovel snow, watch television, attend baseball games, use a computer, and manage his own finances. The ALJ afforded the opinion of Dr. Rozenfeld "great weight," gave "some weight" to certain reports from Urbanek's treating physicians and the agency psychologists, and gave little weight to the remaining reports from Urbanek's treating physicians. The ALJ observed that despite Urbanek's ongoing complaints of fatigue and poor concentration, his doctors characterized him as alert, cooperative, engaged, and having normal or even "excellent" recall. The ALJ concluded that Urbanek's testimony regarding the severity or frequency of his symptoms was not consistent with the totality of the evidence.

At step 4, the ALJ relied on the vocational expert's testimony to conclude that Urbanek could perform his past work as a production assembler. At step 5, she again relied on the vocational expert's testimony to conclude that he could perform other jobs available in the national economy (as a cleaner, mail clerk, or routing clerk).

The Appeals Council denied review, and so the ALJ's decision was the Commissioner's final decision. *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

The district court upheld the ALJ's decision. It rejected Urbanek's arguments that (1) the ALJ failed to properly account for his limitations in concentration, persistence, or pace when evaluating his residual functional capacity; and (2) the ALJ improperly relied on Dr. Rozenfeld's testimony, which, Urbanek maintains, did not explain how he was limited by moderate impairments in concentration, persistence, or pace. The court concluded that Dr. Rozenfeld's conclusions regarding concentration, persistence, or pace were supported by her references to progress notes and examination findings in the record, and that the ALJ reasonably relied on Dr. Rozenfeld's opinion to justify her residual-functional-capacity assessment limiting Urbanek to simple, routine tasks with certain other accommodations for his mental impairments.

## II

In this appeal, Urbanek argues again that the ALJ did not adequately account for his moderate limitations in concentration, persistence, or pace—both in her residual-functional-capacity assessment and in the hypothetical question to the vocational expert. The ALJ erred, Urbanek says, by failing to adequately explain how the limitations in the residual functional capacity and hypothetical question accounted for his symptoms of fatigue, memory problems, and struggles with concentration. Specifically, he argues that the limitation to "simple, routine tasks" limited him only to unskilled work and was unrelated to concentration, persistence, or pace. The remaining limitations, he says, addressed only "social functioning and adaption," not concentration, persistence, or pace.

Though the ALJ need not use any specific terminology, a hypothetical question must "orient the [vocational expert] to the totality of a claimant's limitations," including moderate deficiencies in concentration, persistence, or pace. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)) (alteration in original); *see also Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019), *as amended on denial of reh'g* (Apr. 3, 2019). Often, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the [vocational expert's] consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. But we will let stand "an ALJ's hypothetical omitting the terms 'concentration, persistence [or] pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* at 619.

Here, the ALJ adequately accounted for Urbanek's limitations in concentration, persistence, or pace. Even generic limitations, such as limiting a claimant to simple,

repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they "adequately account for the claimant's demonstrated psychological symptoms" found in the record. *See Jozefyk*, 923 F.3d at 498; *see also O'Connor-Spinner*, 627 F.3d at 619 (summarizing similar cases); *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002). Although the ALJ did not explicitly mention "moderate limitations in concentration, persistence, or pace" in her residual-functional-capacity assessment or in the hypothetical question, she appropriately relied on Dr. Rozenfeld's testimony to formulate Urbanek's residual functional capacity. Indeed, the ALJ included all the doctor's proposed limitations in the residual functional capacity and the hypothetical. Dr. Rozenfeld's testimony is itself evidence that the ALJ may rely on, and it is consistent with the opinions of the agency psychologists and Urbanek's own doctors. An expert's opinion that is supported by two agency doctor opinions is "an adequate evidentiary foundation" to support a residual-functional-capacity assessment. *See White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005); *see also Johansen*, 314 F.3d at 288–89. After reviewing the totality of his medical records, Dr. Rozenfeld acknowledged Urbanek's moderate limitations. But the doctor also concluded that the record did not support the severity of Urbanek's self-reported symptoms and that his concentration was sufficient to complete simple routine tasks accounting for the limitations mentioned above. Thus, the limitations, though phrased in general terms, are properly supported by Dr. Rozenfeld's testimony.

The additional limitations that Urbanek argues should have been included are not supported by medical evidence in the record. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Urbanek points to self-reported symptoms that his own treating physicians could not confirm—difficulty concentrating for extended periods, inability to complete a normal workday, and problems with memory loss and cognitive delay. Urbanek faults the ALJ for not including those symptoms. But his doctors observed that he appeared alert and oriented and had normal-to-excellent recall. The record also shows that, despite Urbanek's complaints, to his treating doctors, of difficulties with concentration and fatigue, several of his treating physicians believed he could work: he had kept a part-time job for many years (and a full-time job for many years before requesting a voluntary layoff) without performance-related issues; he could drive 27 miles each way to work; and he engaged in many simple routine tasks on a daily basis. Further, although Urbanek faults the ALJ for not including limitations requiring a structured environment and accounting for his distractibility by others, she in fact limited him to only occasional interactions with others, no shared or tandem work, and few workplace changes.

Urbanek also more explicitly contends that the hypothetical should have addressed his inability to (1) complete a normal workday without interruptions from his symptoms and (2) consistently work without unreasonably numerous and lengthy breaks. To be sure, the agency doctors checked boxes stating that Urbanek had moderate limitations in these two areas, but they concluded in their narrative opinions that he could sustain the basic mental demands of unskilled work if he were limited to performing simple tasks in a structured work environment. Urbanek argues that the ALJ incorrectly relied solely on agency doctors' narrative summaries. Although checklist observations cannot be ignored, they are "perhaps less useful to an ALJ" than a doctor's narrative summary and do not outweigh the narrative opinions. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). Here, the agency doctors' narrative conclusions, which the ALJ gave only some weight, translate their residual-functional-capacity recommendations and are consistent with Dr. Rozenfeld's testimony, to which the ALJ gave great weight.

Urbanek also challenges Dr. Rozenfeld's testimony as unreliable because it failed to account for all his limitations. First, he argues that Dr. Rozenfeld did not account for Urbanek's difficulties with fatigue, memory loss, need for unscheduled breaks, and inability to complete a normal workday. But he again cites only medical records in which his treating physicians simply wrote down his self-reported symptoms, or medical records that the ALJ gave little weight. Second, he argues that Dr. Rozenfeld did not properly consider his sleep apnea, insomnia, and depression and the resulting implications for his work pace. But she specifically cited Urbanek's depression and sleep disorders as impairments before opining on his functional limitations. Third, Urbanek argues that Dr. Rozenfeld was never specifically asked by the ALJ to include limitations associated with concentration, persistence, or pace. But she opined that he was moderately limited in that area and then immediately stated her recommendation about his functional limitations. Urbanek provides no convincing reason to question Dr. Rozenfeld's opinion, and we will not "reweigh the evidence." *Yurt*, 758 F.3d at 856–57.

AFFIRMED