**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 10, 2020[*]
Decided March 3, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1920

| | |
|---|---|
| GERALD K. UNDERWOOD, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 18-cv-326-slc |
| | |
| ANDREW M. SAUL, | Stephen L. Crocker, |
| Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Gerald Underwood, who suffers from obesity, diabetes, and vertigo, applied for disability benefits alleging an onset date of December 2008. An administrative law judge concluded that his impairments were severe but not disabling, and the district court upheld that determination. We affirm.

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Underwood, now 58, previously held jobs as a golf instructor, a car salesman, and most recently—in 2007—a personal-care worker for a woman with cerebral palsy. Underwood married this woman soon after he began working for her, and he did not work another job after that.

Underwood asserts that he became disabled in December 2008. Because his date last insured was June 2009, the only evidence relevant to this case is that which bears on his medical condition between December 2008 and June 2009.

Underwood has a history of anxiety and depression. In 2006 psychologist James Black, Ph.D., noted that Underwood had a diagnosis of generalized anxiety disorder. He said that it affected Underwood's concentration and motivation, and depending on how well he managed his symptoms, the disorder could affect his ability to keep a job. That same year a counselor for the Department of Vocational Rehabilitation interviewed Underwood, noting that his generalized anxiety disorder led to difficulties making decisions, setting goals, and concentrating. There is evidence that Underwood's mental condition worsened over time: In 2012 Dr. Black wrote a one-page clinical summary noting that Underwood's impairments were more significant now than in the past. He commented that Underwood now suffered from anxiety, depression, and panic attacks, and that he had a Global Assessment of Function[1] score of 55. Despite these concerns, Dr. Black deemed it "less likely than not" that Underwood's symptoms prevented him from working.

The record also contains some evidence of physical impairment. In 2009 for the first (and only) time, Underwood saw ear, nose, and throat specialist Dr. David Rowe for vertigo. Dr. Rowe prescribed medication to treat dizziness and vertigo and opined in a "To Whom It May Concern" letter that Underwood's vertigo left him "feel[ing] unstable from time to time," and that his condition "limits his effectiveness in the workplace." In 2013 Dr. Jason D. Welch commented on a generic "medical form" that Underwood might be able to perform part-time sedentary work, but his deep-vein thrombosis, panic attacks, vertigo, and back and leg pain had prevented him from working full time since 2006.

---

[1] The Global Assessment of Functioning scale rates social, occupational, and psychological functioning on a scale from 0 to 100; a score of 55 denotes moderate symptoms or moderate difficulty functioning. This scale "no longer is widely used by psychiatrists and psychologists." *Winsted v. Berryhill*, 923 F.3d 472, 474 n.1 (7th Cir. 2019).

Several state-agency doctors examined Underwood, but each explained that there was not enough evidence in the record to conclude that Underwood had any severe impairments or disabling symptoms. Medical doctors Sunita Patel and R. James Mabry, as well as psychologists Thomas Conger, Ph.D., and Sanford Golin, Ph.D., all evaluated Underwood's medical records initially in 2011 and then again on reconsideration in 2012. At both stages they found "insufficient evidence" to conclude that Underwood had any severe impairments or disabling symptoms.

There is also evidence about the extent of Underwood's impairments in the form of a third-party functional report completed in 2012 by Randall Ebben, one of Underwood's longtime friends. Ebben reported that Underwood took care of his wife (suffering from cerebral palsy) and their dogs, did all kinds of household chores, drove, shopped, attended live-music events, and played golf three to five times a week.

The legal proceedings in this case have been protracted. Underwood filed for disability-insurance benefits and supplemental-security income in 2011 alleging that he had been disabled since December 2008. The agency denied Underwood's disability-insurance-benefits claim initially and on reconsideration. (The agency also rejected his supplemental-security-income claim because his assets exceeded the statutory limit; he did not appeal that decision.) After a hearing an ALJ denied his claim in 2013. Underwood sought judicial review, and in 2015 the parties stipulated to a remand so that Underwood could present additional evidence at a new administrative hearing.

Underwood had a second hearing the following year before a different ALJ, who denied his claim. The Appeals Council, however, acknowledged a need for further evaluation of Underwood's mental impairments, diabetes, and vertigo, and vacated the decision, remanding the matter once again.

A third hearing was held in 2017 before another ALJ, who also denied Underwood's claim, finding him not disabled. The ALJ concluded that Underwood had three severe impairments (vertigo, diabetes, and obesity); that despite these impairments, Underwood retained the residual functional capacity to perform sedentary work, subject to additional limitations (unskilled work; only occasional decision-making; no heights, hazards, machinery, or climbing; and only occasional stooping, crouching, or ascending ramps or stairs); and that there were several jobs in the national economy that he would be able to perform (including sorter, order clerk, and office helper). Of particular relevance to this appeal, the ALJ considered the

opinions of Dr. Black, discussed the Global Assessment of Functioning score he assigned, and noted that Dr. Black had treated Underwood only intermittently. The ALJ also discussed (and assigned either "some" or "little" weight to) the opinions of the state-agency physicians and gave weight (the ALJ did not say how much) to Ebben's third-party report.

The district court upheld the ALJ's decision. The court noted that most of Underwood's submissions were irrelevant to his appeal: his brief was a duplicate of the brief he filed in 2015, and most of his other documents involved treatment or events that occurred well beyond the limited six-month period at issue. But the court was able to discern seven arguments germane to the third ALJ's decision and rejected each of them. Only one of those seven is relevant to this appeal: the court found no evidence to support Underwood's argument that Ebben's functional report was inaccurate and should not have been considered.

On appeal before this court, Underwood asserts generally that the ALJ "focus[ed] on several alleged inconsistencies in the record in an overall misguided attempt to discredit the plaintiff." Yet Underwood points only to Ebben's third-party functional report, which he says the ALJ should have disregarded because "Underwood's family life was simply irrelevant."

This underdeveloped argument is without merit. The Social Security rules explicitly permit an ALJ to consider "non-medical sources such as family and friends" when evaluating a claimant's statements about "the intensity, persistence, and limiting effects of [his] symptoms." SSR 16-3p, 81 Fed. Reg. 14166-01, 14169 (Mar. 16, 2016); *see also* 20 C.F.R. § 404.1527(f)(2). Underwood points to no other "inconsistencies" or attempts "to discredit" him, nor do we see any.

Next, Underwood argues for the first time that the ALJ "ignored and mischaracterized medical evidence in the record." Underwood's lone example is that, according to him, the ALJ ignored Dr. Black's July 2012 letter assigning him a Global Assessment of Function score of 55.

There are multiple problems with this argument, the foremost being that he waived this argument by failing to raise it in the district court. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). But waived or not, his assertion that the ALJ ignored that score is untrue: the ALJ discussed Dr. Black's 2012 medical report several times, including the Global Assessment of Functioning score. The ALJ gave this report "some"

weight but noted that in that report, Dr. Black himself opined that Underwood could probably maintain employment despite his mental-health status. In any event, Dr. Black's 2012 report described only Underwood's current condition at the time, and this report would not necessarily provide insight into his condition during the relevant 2008–2009 period.

Finally, Underwood argues, also for the first time, that the ALJ cherry-picked the record and relied solely on the opinions of the state-agency physicians; he argues that those opinions "cannot alone constitute substantial evidence that justifies the rejection of the opinion of a treating physician." This argument, too, is waived, *see id.*, and anyway, the assertion that the ALJ overrelied on the opinions of the state-agency physicians is without basis. The ALJ explained that "[a]lthough considered," he accorded those opinions less weight because of "the additional evidence subsequently submitted for the period in question" (an apparent reference to Dr. Black's 2012 letter, Dr. Welch's 2013 medical form, and Ebben's functional report).

Insofar as Underwood's appeal attempts to raise other arguments, those arguments are too undeveloped to address. We AFFIRM the decision of the district court.