NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 2, 2020[*]
Decided November 3, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-1564

| | |
|---|---|
| VIRGIL LOCKETT, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-1183-GCS |
| ANDREW M. SAUL, <br> Commissioner of Social Security, <br>     *Defendant-Appellee.* | Gilbert C. Sison, <br> *Magistrate Judge.* |

**O R D E R**

Virgil Lockett challenges the denial of his application for supplemental security income. He contends that the administrative law judge neglected to consider his limitation in maintaining pace and improperly relied on an altered transcript of a previous hearing. But because the ALJ supported her decision with substantial evidence, and Lockett's claim of evidence tampering is unsubstantiated, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

In 2012, Lockett, then 43 years old, applied for social security benefits, claiming that he had been unable to work since 2009, when he injured his back at work. He later asserted that anxiety also disables him. The Social Security Administration denied his application at each stage. In 2016, however, a district court remanded the case for further consideration of a consultative examiner's findings. The agency again denied his application, and this time the district court upheld the decision. Lockett now appeals.

Because Lockett meaningfully challenges only the ALJ's assessment of his mental limitations, we focus on that aspect of his medical history. Lockett has received treatment for anxiety and depression since at least 2012 from his primary care physicians: family-medicine doctors Dr. Susan Reynolds (in 2012) and Dr. Miguel Granger (from 2013 onward). In December 2012, Dr. Reynolds saw Lockett for anxiety related to his chronic back pain. She noted that Xanax (which, apparently, he had been prescribed earlier) helped control his symptoms, which occurred daily and included "anxious/fearful thoughts [and] depressed mood." Starting in October 2013, Lockett regularly saw Dr. Granger for what appear to be routine follow-up visits. Dr. Granger prescribed Viibryd and later sertraline, which Lockett has taken since 2015.

Steven Vincent, Ph.D., a clinical psychologist acting as an agency consultant, who examined Lockett in 2013 and again in 2017, found at most moderate limits in any area of mental functioning. In December 2013, Lockett complained of symptoms including anxiety, worry, and poor sleep, but he denied problems with concentration and memory. Dr. Vincent found mild or moderate limits in all aspects of following instructions and interacting with others, resulting from anxiety over chronic pain and unemployment. In July 2017, Dr. Vincent found Lockett slightly less impaired. He had anxiety symptoms, depressed mood, feelings of hopelessness and worthlessness, and fear of increased pain. Dr. Vincent listed poor concentration as a symptom but noted that Lockett denied disturbances in concentration and memory. This time, Dr. Vincent found only mild limitations in all aspects of following instructions and interacting with others. He concluded that Lockett suffered from anxiety, depression, and somatic symptom disorder related to his excessive thoughts about pain and physical limitations.

At an April 2014 hearing before an ALJ, Dr. James Reid, a clinical psychologist testifying as a medical expert, stated that Lockett suffered from depression and generalized persistent anxiety. He concluded that Lockett was mildly impaired in activities of daily living; moderately impaired in social function; and moderately impaired in concentration, persistence, and pace. He further opined that Lockett should

be restricted to a simple, repetitive, routine work environment with only occasional interaction with the public. (Lockett did not testify about his mental functioning.)

After the district court remanded the case, a new ALJ held a second hearing in November 2017 and heard testimony from Lockett and Laverne Gee, a friend who described herself as Lockett's caregiver. Lockett testified that his anxiety "just makes it hard … to be someplace for any period of time." He also described recently earning an associate's degree, primarily online, in an effort "to help with [his] personality and communicate with people." Lockett further testified about panic attacks he had experienced while driving on the highway. Gee testified that she regularly took Lockett grocery shopping and that he could not tolerate remaining inside a crowded store but would flee and abandon his cart of groceries.

The ALJ determined that Lockett was not disabled. As relevant here, she found that he had the severe impairments of generalized anxiety disorder, depressive disorder, and somatic symptom disorder. But she ultimately concluded that, although he could not do his past work, he could perform other jobs that a vocational expert had testified were available in the national economy to someone with his residual functional capacity. With respect to his mental impairments, he could carry out instructions for simple, routine, repetitive tasks; make simple work-related decisions in a routine environment with no more than occasional changes; interact at most frequently with co-workers and never with the public; and never drive for work. The ALJ adopted all the limitations that Dr. Reid had recommended plus the restriction on interacting with the public, which was based on Lockett's and Gee's testimony. But she did not fully credit Lockett's allegations about the severity of his anxiety, citing his ability to relate to family and friends and interact with classmates, professors, and medical professionals. She also noted Lockett's limited history of mental health treatment: medication and primary care visits, but no specialist care, counseling, or hospitalization.

The Appeals Council denied review, and the district court upheld the ALJ's decision. In our de novo review, we ask whether the ALJ's decision is supported by substantial evidence—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

On appeal, Lockett primarily argues that his medical conditions and medication side-effects prevent him from maintaining pace over a full work week and that the ALJ failed to account for this limitation in his residual functional capacity. He cites *Crump v. Saul*, in which we stated that "observing that a person can perform simple and

repetitive tasks says nothing about whether the individual can do so on a sustained basis." 932 F.3d 567, 570 (7th Cir. 2019).[1]

But substantial evidence supports the ALJ's determination that Lockett had only moderate limitations in concentration, persistence, and pace, which the ALJ accounted for. The residual functional capacity incorporated all mental-health restrictions recommended in any medical opinion in the record. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). And the medical expert (Dr. Reid) testified that Lockett could work in a "simple, repetitive, routine work environment with only occasional interaction with the public." The ALJ was entitled to rely on this opinion. *Id.*

On the other hand, Lockett points to no evidence that compelled a finding that he required more restrictions than Dr. Reid recommended. Although Lockett testified that anxiety and panic attacks impair his concentration and ability to complete activities, the ALJ concluded that his account was not fully consistent with his recent completion of a college degree and behavior at medical examinations. Lockett does not challenge this determination on appeal. Further, he points to no evidence of *any* limitations specific to pace. A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one of* those areas, not necessarily all three. *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f).[2]  So Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the "moderate" designation; he must have evidence of that need, and he cites none. Finally, Lockett's reliance on *Crump v. Saul* is misguided: in *Crump*, the ALJ had disregarded the treating physician's opinion about the claimant's limitations. 932 F.3d at 571. Here, no doctor opined that Lockett had restrictions beyond those the ALJ found.

Next, Lockett argues that the transcript of his first administrative hearing was incomplete. He asserts that in 2014, Dr. Reid testified that Lockett should never be

---

[1]  To the extent Lockett argues that the ALJ failed to address his *physical* ability to sustain work activities for a prolonged period, we note that (1) "pace" is an area of mental functioning, 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00(E)(3), and (2) a residual functional capacity determination, by definition, addresses what activities a claimant can sustain over the course of a work week. *See* 20 C.F.R. § 404.1545(b). Further, Lockett also points to no evidence in the record suggesting that he is physically unable to sustain work for a full week.

[2]  These regulations took effect in January 2017 and apply to claims that were pending at that time. 81 Fed. Reg. 66138, 66138, 66165 (Sept. 26, 2016).

around other people but that this statement has been removed from the transcript. He offers as evidence his own recollection and the presence of dashes and the words "phonetic" and "inaudible" in the transcript. The ALJ appropriately rejected Lockett's uncorroborated recollection because she saw no evidence of tampering. Further, restricting Lockett to no contact with others would have been inconsistent with Dr. Reid's testimony that Lockett had only moderately impaired social interaction. Finally, the common transcriptionist's notations do not suggest irregularity; in any case, Dr. Reid's testimony contains very few—and none that could indicate that a sentence or more was omitted.

Lockett further argues that the ALJ should not have even considered the expert testimony from the first hearing, which by then was several years old. But the ALJ explicitly accounted for the age of the testimony when drawing her conclusions. Lockett filed his claim in 2012, so evidence from 2014 remained relevant, and nothing prevents an ALJ from considering evidence from a pre-remand hearing. *See* 20 C.F.R. § 404.983; *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

Finally, Lockett argues that the district court (not the ALJ) misstated his age as 49 when he is over 50 and that, under the Medical Vocational Guidelines, he is disabled at his real age. But the court correctly considered Lockett's age at the time of the ALJ's decision. In any case, it appears that a 51-year-old with a high school education and the ability to perform light work is not disabled under the Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13.

We have considered Lockett's other arguments (except those raised for the first time in his reply brief, *see Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018)), and they are without merit.

AFFIRMED